UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CIVIL ACTION NO. 11-277-SAS-JGW

KELVIN LOVETT                                                                PLAINTIFF

v.

STEPHEN COLE, et al.                                                      DEFENDANTS

## REPORT AND RECOMMENDATION

On May 2, 2011, plaintiff, an Ohio state prisoner, filed a *pro se* civil suit against certain prison guards, the deputy warden, and the warden of the Lebanon Correctional Institution alleging excessive use of force under 42 U.S.C. § 1983. Doc. 3. The warden and deputy warden were dismissed from the case (Docs. 5, 28) and the remaining defendants have moved for summary judgment (Doc. 129). *Pro se* plaintiff filed a memorandum in opposition (Doc. 131) and defendants replied (Doc. 137). The motion is now ripe for decision.

### I. Facts and Procedural Background

Plaintiff is serving a fifteen year sentence for rape, kidnapping, and aggravated burglary. Doc. 129 at 2. On or about January 14, 2011, he was involved in an altercation with defendant Brown, a corrections officer. Plaintiff admits that prior to the altercation he committed a rule violation by being out of place. Doc. 3 at 5. Brown noticed plaintiff's violation and escorted him back to his cell.[1] Doc. 129, Ex. C at ¶ 4; Doc. 3 at 5. Thereafter, Brown ordered plaintiff to step out of his cell into the corridor so that he could perform a search, which defendants claim is

---

[1]Plaintiff maintains that Brown locked him in his cell as punishment, which is "a break in policy," claiming a conduct report should have been written instead. Doc. 3 at 5. Defendants disagree, asserting that such action was indeed required. Doc. 129 at 8.

1

required by policy. Doc. 129 at 8, Ex. C at ¶ 5; Doc. 3 at 5. This precipitated the confrontation, though the parties present starkly different accounts of what transpired.

Plaintiff alleges that Brown barely searched plaintiff's belongings, but instead rummaged through plaintiff's cellmate's possessions in what plaintiff asserts was "a tactic used to cause serious physical harm to me, because my cellmate is a head gangleader . . . ." Doc. 3 at 5. He maintains Brown did this because he and the other defendant officers have antipathy towards him, a convicted sex offender. Doc. 131 at 5. Plaintiff alleges he objected to Brown's measures and asked for a supervisor, at which point Brown "charged me with two hands, and pushed me in the chest, causing me to stumble into my cell." *Id*. at 5-5A. Plaintiff then details the alleged beating he received at the hands of the defendant correctional officers, including being hit with nightsticks by four officers, causing "massive bleeding from [his] left elbow (which was x-rayed)," a severe head wound, a swollen eye, and eventually loss of consciousness. *Id*. at 5A. When he regained consciousness, plaintiff alleges he was being escorted down the stairs by defendant Mathis, who "ran me face first into each wall," at least twice. *Id*. Plaintiff maintains defendant Cole then took him to a back room in the infirmary, where four defendant officers took turns beating him in the side, arm, and legs. *Id*. In support, plaintiff submitted several pictures of his injuries. Doc. 131, Ex. 1. Plaintiff's injuries, particularly his bloodied head and face, are apparent.

In contrast, defendants portray the altercation much differently and point to the surveillance video filed with the Court in support of their version of events. Defendants allege that after searching plaintiff's cell, Brown asked plaintiff to return to the inside of his cell so that he could place him in handcuffs and take him to segregation, which plaintiff refused. Doc. 129

at 3, Ex. C at ¶ 6. Brown repeated his order and plaintiff began to enter his cell, when defendants allege he turned, faced Brown in the corridor, and punched him in the left side of Brown's face and mouth. *Id*. at 3-4, Ex. C at 8, Ex. D. After being hit, defendants allege Brown activated his Man Down Alarm, which alerted other officers that he needed help. *Id*. at 3, Ex. C at ¶ 9. Defendants maintain Officers Roles and Williams responded and all three entered plaintiff's cell and attempted to restrain him, as plaintiff continued to throw punches at the officers. *Id*. at 4, Ex. C at ¶ 10-11. After restraining him, the officers took plaintiff to the infirmary. *Id*. at 5. Defendants allege that all of the officers acted in accordance with the Use of Force policy, 63-UOF-03 (*Id*. at Ex. J, p. 7). Indeed, they argue that Brown and the responding officers actually employed substantially less force than they were authorized to use. *Id*. at 4-5. Defendants also dispute plaintiff's recounting of his injuries, pointing to the Medical Exam Report which showed only a half inch by one millimeter laceration on his scalp, a superficial laceration on his neck, abrasions on his back, three areas of swelling on his scalp, nose, and left arm, and two lacerations on his left arm. *Id*. at Ex. K.

## II. Legal Framework

a. Summary Judgment Standard

Summary judgment is appropriate if the pleadings, discovery, disclosure materials, and affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the Court must draw all reasonable inferences in favor of the non-movant -

in this case, the *pro se* plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). As the moving party, defendants have the initial burden of marshaling concrete support in the record for its assertion that no genuine dispute exists. Fed. R. Civ. P. 56(c). Once the movants have met their obligation, the burden shifts to the non-movant plaintiff to set forth "specific facts showing that there is a genuine issue for trial." *Id*. The key issue on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

b. Qualified Immunity

In addition to moving for summary judgment on the merits, defendants also assert they are shielded from suit under the doctrine of qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It is the defendants' burden to raise the protection of qualified immunity, at which point the burden shifts to plaintiff to prove it is inapposite. *Baker v. Goodrich*, 649 F.3d 428, 433 (6th Cir. 2011). Courts employ a two-prong test for qualified immunity claims, asking, in whichever order the Court deems appropriate, (1) whether the facts alleged by plaintiff make out a violation of a constitutional right, and (2) whether the constitutional right so violated was "clearly established" at the time of defendants' misconduct. *Pearson*, 555 U.S. at 232, 236. Unless both questions are answered affirmatively, plaintiff's suit is barred by qualified immunity.

4

A right is clearly established for qualified immunity purposes when,

> a reasonable person in the officer's position would know that the conduct complained of was unlawful." *Bletz v. Gribble,* 641 F.3d 743, 750 (6th Cir. 2011) (citation omitted). "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) (citation and internal quotation marks omitted). "A right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point." *Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir. 2002) (citation omitted). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent." *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (citations omitted). Public officials could "still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

*Skovgard v. Pedro*, 448 F. Appx 538, 546 (6th Cir. 2011).

### III. Analysis

a. Do Plaintiff's Allegations Amount to a Violation of a Constitutional Right?

Whether plaintiff's allegations amount to the infringement of a constitutional right is a question relevant to both the substantive component of defendants' motion for summary judgment as well as the issue of qualified immunity. Therefore, the Court will undertake such an inquiry at the outset.

    1. *Excessive Use of Force*

42 U.S.C. § 1983 prohibits a person "acting under color of state law" from depriving another "of a right secured by the Federal Constitution or laws of the United States." *Griffin v. Hardwick*, 604 F.3d 949, 953 (6th Cir. 2010) (quotations omitted). Plaintiff alleges that defendants breached § 1983 by using excessive force in violation of the Eight Amendment's proscription against cruel and unusual punishment. *See Whitley v. Albers*, 475 U.S. 312, 327

5

(1986).

In analyzing a prisoner's Eighth Amendment excessive force claim, courts ask, "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). This standard accounts for the unique setting of prison, where the need for "security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002). The standard "has both an objective and a subjective component. The objective component requires that the pain be serious. The subjective component requires that the offending, non-penal conduct be wanton." *Griffin*, 604 F.3d at 954 (quotations omitted). To determine whether the use of force was wanton, courts look to several factors, including, "the extent of injury suffered by an inmate, 'the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.'" *Combs*, 315 F.3d at 556-57 (quoting *Hudson,* 503 U.S. at 7). Importantly, "[b]ecause prison officials 'must make their decisions in haste, under pressure, and frequently without the luxury of a second chance,' [courts] must grant them 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Combs*, 315 F.3d at 557 (*quoting Hudson*, 503 U.S. at 6).

   *2. Plaintiff's Allegations*

In this case, even drawing all reasonable inferences in plaintiff's favor, there is no genuine dispute that defendants' actions did not amount to excessive use of force violative of the

6

Eighth Amendment. Defendants have identified significant evidence in the record in support of their motion for summary judgment, including: declarations from defendants Brown, Roles, and Williams; the incident, medical, and use of force reports; the Use of Force/Response to Resistance Continuum; and the surveillance video. Plaintiff readily admits both that he broke a rule and that he disobeyed Officer Brown's direct order to return to his cell. Doc. 131 at 27. As shown in the admittedly difficult to discern video,[2] defendant Brown's response to plaintiff's disobedience was to push him with two hands into his cell.[3] At that point, plaintiff is out of the video camera's range, though Brown is visible and can be seen in a defensive stance, holding plaintiff off, so to speak, while he calls for backup. Doc. 129, Ex A at 19:12-13. Multiple officers respond to assist Brown in subduing plaintiff, action that also takes place off camera in plaintiff's cell. Plaintiff emerges in handcuffs and is lead away as he walks under his own volition. *Id.* at 19:13-15. This video evidence comports with the other evidence defendants cite in support of their motion, including the Use of Force Committee Report (Doc. 129 at Ex. G), Brown's declaration (Doc. 129 at Ex. C), Williams' declaration (Doc. 129 at Ex. H), and Roles' declaration (Doc. 129 at Ex. I).

---

[2]The Supreme Court has authorized the use of video evidence in ruling on summary judgment. Although at this stage all reasonable inferences are to be made in favor of the non-moving party, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[3]As stated *supra*, defendants maintain that plaintiff struck Brown in the face, starting the physical confrontation. Because the video can only be played at ten times speed, meaning each one second played on the video corresponds to ten seconds of real time, it is difficult to tell whether plaintiff strikes Brown, or whether Brown pushes plaintiff because he disobeyed Brown's order. For the purposes of summary judgment, the Court will assume plaintiff did not strike Brown in the face.

In addition to the evidence supporting defendants' motion, many of the factors to consider in determining whether defendants' conduct reflected a wanton infliction of pain militate in defendants' favor. The extent of plaintiff's injuries were relatively minor. Doc. 131, Ex. B. The need for application of force was substantial in light of plaintiff's acknowledged rule breaking and refused to obey defendant Brown's direct order. The relationship between the need to use force in light of these issues and the amount of force used was appropriate, particularly when considering plaintiff's physical behavior. The threat reasonably perceived by defendants was significant, as plaintiff was both disobedient and fighting back.

Moreover, defendants have shown that they acted in accordance with the policies regarding use of force that were in place at the time of the incident. As stated, defendants employed force well within the limits of the Use of Force policy. Under the "Response to Resistance Continuum," when plaintiff disobeyed defendant Brown's direct order to return to his cell, Brown was permitted to give verbal and physical commands, both of which he did. Doc. 129, Ex. J at 7. After Brown pushed plaintiff into his cell, he properly requested assistance from other officers and fought off plaintiff's physical challenge. The policy actually allowed Brown to use harsher techniques, including "balance displacement," "stunning/striking muscle groups," employing "aerosols/chemicals or electrical devices," and performing "take downs, joint manipulations or pressure points." Doc. 129 at Ex. J. As previously recounted, the Supreme Court has directed courts to provide prison officials, "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Hudson*, 503 U.S. at 6. Plaintiff does not challenge the propriety of the policies under which defendants performed their duties.

8

The fact that defendants did undertake their duties well within the limits of these policies is further evidence supporting their motion for summary judgment.

Defendants have produced substantial evidence supporting their assertion that no genuine dispute exists and therefore that summary judgment is appropriate. Therefore, the burden shifts to plaintiff to present specific facts establishing a genuine dispute for trial. Plaintiff has failed to do so.

It is true that plaintiff alleges he received a savage beating at the hands of the defendant prison officers, both in his prison cell while he was being subdued off camera, and in a back room off the infirmary. These allegations, however, are clearly contradicted by other evidence in the record. First, plaintiff maintains that when the officers subdued him in his cell he suffered such a severe beating that he lost consciousness. Doc. 3 at 6. Yet the video evidence shows a clearly conscious plaintiff walking away in handcuffs. Secondly, both the photographic evidence and the medical reports controvert allegations of a back room beating, as plaintiff suffered only relatively minor injuries, rather than the significant injuries that would doubtless result from a five to eight minute beating by four officers. Doc. 131, Ex. A, B. The evidence is conclusive, even granting plaintiff all reasonable inferences therefrom, that defendants followed the policies in place and used only the amount of force necessary to restore security and discipline following plaintiff's rule violation and disobedience.

### IV. Conclusion

There is no genuine dispute that defendants did not use excessive force against plaintiff. Therefore, for the substantive reasons provided, defendants should be entitled to summary judgment on plaintiff's claim for excessive use of force. Additionally or alternatively, summary

9

judgment should also be granted because defendants are entitled to qualified immunity, as plaintiff has not shown that the facts alleged amount to the violation of a constitutional right.[4] Accordingly,

**IT IS RECOMMENDED:**

(1) Defendants' motion for summary judgment [Doc. 129] should be **granted**.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *see also U.S. v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to another party's objections within fourteen days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).

This, the 15th day of November, 2012.

s/ J. Gregory Wehrman
J. Gregory Wehrman
United States Magistrate Judge

---

[4] Because plaintiff has failed to prove one of the prongs necessary to defeat defendants' qualified immunity claim, the Court need not analyze the other prong before finding defendants entitled to such protection. *Pearson*, 555 U.S. at 232, 236.