UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KELVIN R. LOVETT,

    Plaintiff,

vs.

OFFICER STEVEN COLE, *et al.*,

    Defendants.

Case No. 1:11-cv-277

Judge Timothy S. Black

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS IN LIMINE (Docs. 201, 202, 203, 204)

This civil action is before the Court on Defendants' motions *in limine* (Docs. 201, 202, 203, 204) and the parties' responsive memoranda (Docs. 208, 212, 216, 217, 218, 219).[1]

Defendants move the Court to exclude evidence and testimony concerning: (1) non-expert medical opinions; (2) the January 14, 2011 cell search; (3) spoliation; and (4) protected evidence.

### I.    STANDARD OF REVIEW

"A ruling on a motion *in limine* is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). Courts may properly deny or defer ruling on motions *in limine* where issues such as foundation, relevance, and potential prejudice

---

[1] In this civil rights case, Plaintiff alleges that correctional officers at Lebanon Correctional Institution ("LCI") used excessive force against him on January 14, 2011, in violation of his Eighth Amendment right to be free form cruel and unusual punishment.

require the context of the trial for resolution. *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp.2d 844 846 (N.D. Ohio 2004). Moreover, because *in limine* rulings are advisory in nature, a court may alter its ruling during the course of the trial. *Luce v. United States*, 469 U.S. 38, 41-42 (1984).

## II. ANALYSIS

### A. Non-Medical Opinions

In his complaint, Plaintiff asserts that his injuries are more extensive that those reflected in the medical record – to wit "massive bleeding, loss of consciousness, head bust[ed] open." (Doc. 3 at PageID 39). Defendants argue that Plaintiff should not be permitted to offer any testimony about medical evidence because he is unqualified.

While Federal Rule of Evidence 701(c) specifically precludes a lay witness from "testifying as to opinions or inferences which are not based on scientific, technical, or other specialized knowledge within the score of rule 702," it also provides that "testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

In *Freeman v. Collins*, the Court decided an almost identical motion *in limine*. 2:08cv21, 2014 U.S. Dist. LEXIS 10872, at *11 (S.D. Ohio Jan. 29, 2014). In that excessive force case, the plaintiff argued that he had no intention of offering qualified medical opinions; rather, he intended to provide "basic lay witness testimony concerning the subjective sensations he felt with Defendant Kaut sprayed him with mace." *Id*. The

2

court agreed, finding that "Plaintiff may, of course, offer testimony concerning the pain when sprayed with mace and he is also free to testify that he underwent a laminesctomy and subsequent throat surgery two years prior to the [use of force] incident pursuant to Federal Rule of Evidence 701." *Id.* at 12.

As in *Freeman,* Plaintiff is permitted to testify about the subjective physical and mental pain he experienced during and as a result of the alleged use of force incident on January 14, 2011, as well any medical procedures and testing he underwent as a result of the incident.[2]

### B. January 14, 2011 Cell Search

Next, Defendants opine that Plaintiff intends to introduce evidence pertaining to the January 14, 2011 cell search and/or purported damage to his or his then cellmate's property. Defendants argue that since these issues were not raised in the complaint, they are inappropriate for trial.

While Plaintiff does not seek to bring private claims for personal property damage, he does intend to introduce evidence regarding the search. Evidence of Defendant Brown's cell search that immediately preceded the use of force incident on January 14, 2011 is relevant to Plaintiff's excessive force claim. Plaintiff must establish that Defendants acted with the requisite state of mind – "maliciously and sadistically" when

---

[2] It is important to note that a medical professional may be called to testify in this case. Just because a professional testifies at trial, does not mean that s/he is required to testify as an expert. The witness can still testify about her first-hand observations, including opinions formed during the course of treatment. *See, e.g., Lee v. Metro. Gov't Nashville Davidson Cty*., 432 F. App'x 435, 446 (6th Cir. 2012) (in an excessive force case, pursuant to Rule 701, the trial court did not err in admitting opinion testimony of the treating doctor based on his personal experience with the plaintiff/patient, not his medical expertise).

3

applying the force at issue. *Williams v. Curtin*, 631 F. 3d 380, 383-84 (6th Cir. 2011). Defendant Brown's cell search immediately preceded the use of force incident at issue here. (Doc. 129-3). Accordingly, evidence of the events that transpired prior to, during, and immediately after the cell search are relevant and indeed necessary to prove Defendant Brown's state of mind at the time of the use of force incident.[3]

### C. Spoliation

Next, Defendants seek to exclude evidence regarding spoliation of video surveillance footage and photographs of Plaintiff's injuries.[4]

This Court previously determined that the "out of place" video footage and the digital photographs of Plaintiff's injuries and cell were "clearly relevant evidence." (Doc. 206 at 4). While the Court declined to find that the evidence was destroyed with the "culpable state of mind" necessary to warrant an imposition of sanctions, implicit in the Court's Order is the fact that relevant evidence was not maintained. At trial, Plaintiff is permitted to argue that the digital color photographs and the "out of place" video footage were not maintained, but he cannot suggest that the evidence was "destroyed," which implies a culpable state of mind. Furthermore, Plaintiff is permitted to test Defendants' and other witnesses' knowledge regarding the characteristics of the original photographs as well as their knowledge regarding alternatives that could have been used

---

[3] Defendants did not oppose this request. (*See* Doc. 217).

[4] Defendants also request that Plaintiff be precluded from obtaining an adverse jury instruction based on the spoliation of evidence. However, this Court has already addressed this issue, declining to issue an adverse jury instruction. (Doc. 206).

4

to document Plaintiff's injuries and/or investigate the use of force incident.[5]

### D. Protected Evidence

Pursuant to the Protective Order, this Court ordered Defendants to produce copies of their personnel files which included personal information, use of force reports of unrelated inmates, as well as outside medical records. (8/29/14 Notation Order). Not surprisingly, Plaintiff's counsel now seeks to disclose some of those documents at trial. Defendants argue that the protected information that Plaintiff seeks to present at trial is irrelevant, prejudicial, and will only confuse the jury. Defendants seek to exclude: (1) unrelated use of force incidents that the Defendants were involved in throughout their employment with the Ohio Department of Rehabilitation and Correction ("ODRC"); and (2) personal and private background medical information as contained within the outside medical records.

#### 1. Prior use of force incidents

The Sixth Circuit employs the following three factor test when determining whether evidence is admissible pursuant to Rule 404(b)(2): "(1) whether the other acts actually occurred, (2) whether they were admissible for a permissible [Rule] 404(b) purpose, and (3) whether the district court correctly determined that the acts' probative value was not substantially outweighed by the danger of unfair prejudice." *United States v. De Oleo*, 697 F.3d 338, 344 (6th Cir. 2012).

---

[5] Defendants did not oppose this request. (*See* Doc. 218). The Court notes, however, that although evidence of the digital photographs and "out of place" video footage is relevant, the Court will not permit the parties to conduct a mini-trial on this collateral issue.

5

<u>First</u>, there is no dispute that the prior uses of force occurred. The prior use of force records documenting the incidents were produced by Defendants as part of their respective personnel records. Defendants are concerned with the disclosure of "confidential or security-sensitive information" but fail to specify what information is sensitive. Plaintiff offers to use partially redacted copies of the use of force reports. Specifically, Plaintiff is willing to redact: (1) names of other inmates not involved in the January 14, 2011 use of force incident; and (2) names of corrections officers and ODRC staff who were not involved in the January 14, 2011 use of force incident, and/or subsequent use of force investigation, and/or administrative processes (*e.g.*, the use of force investigation and Rule Infraction Board hearing).

<u>Second</u>, the evidence is highly relevant.[6] Defendants assert that evidence of their prior uses of force against other inmates "has no bearing or relevancy to the instant case." However, Defendants' experiences with use of force incidents goes to their intent and state of mind during the January 14, 2011 incident. Additionally, Defendants' prior uses of force may evidence that they deviated from more common, or less aggressive methods of restraining and/or controlling an inmate – a factor that the jury must consider when determining whether the force employed by Defendants was excessive. *See, e.g., Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011) (for the fact-finder to evaluate whether a corrections officer applied force maliciously and sadistically, instead of maintaining discipline, the fact-finder must evaluate certain factors, such as "the need for

---

[6] A district court has "broad discretion to determine matters of relevance." *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 587 (6th Cir. 1994).

6

application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.").

Third, without additional information regarding what evidence Plaintiff intends to introduce, the Court cannot determine whether the acts' probative value is outweighed by unfair prejudice. Accordingly, the Court defers ruling until it has a better understanding of the context.

### 2. Medical Records

Finally, Defendants argue that Plaintiff should be prohibited from introducing evidence related to Defendants' "outside medical records" and "private medical information."

Defendants put their post-incident physical conditions directly at issue when asserting that Plaintiff struck an officer and resisted restraint. *See, e.g., Heilman v. Waldron*, 287 F.R.D. 467, 473-74 (D. Minn. 2012) ("The Court finds that physician-patient communications regarding Waldron's neck and back are relevant. Defendants contend that Waldron's use of force was necessary to overcome Heilman's chokehold. Defendants have also pointed to Waldron's neck injuries, which Heilman allegedly caused. It is important for Plaintiff to determine to what extent Waldron's neck injuries preexisted his altercation with Heilman.").[7] These medical records are relevant regarding

---

[7] Medical records relating to a Section 1983 use of force incident are routinely admitted into evidence, and this case is no different. *See, e.g., Helfrich v. Lakeside Park Police Dep't*, 497 F. App'x 500, 504 (6th Cir. 2012) (discussing the admission of medical record evidence during an excessive force trial that pertained to the officer's trip to the hospital after taking the plaintiff to jail, including admitting the hospital record of the visit into evidence at trial and reading portions of the record to the jury during trial).

7

the use of force applied by the defendants-officers, the extent of force and/or resistance applied by the plaintiff-inmate, if any, and damages.[8]  Accordingly, Defendants' medical records are admissible.[9]

### III.   CONCLUSION

Wherefore, for these reasons, Defendants' motions *in limine* (Docs. 201, 202, 203, 204) are **GRANTED IN PART** and **DENIED IN PART** as set forth in this Order.

**IT IS SO ORDERED**.

Date:  11/7/14                                                              *s/ Timothy S. Black*
                                                                            Timothy S. Black
                                                                            United States District Judge

---

[8] Moreover, pursuant to ODRC policies, all parties' medical records relating to the use of force incident were evaluated by the Use of Force Committee and included in its report. (Smarda Decla, Ex. 1-E). Defendants also attached an unredacted copy of Defendant Brown's Medical Exam Report to their motion for summary judgment, which is publically available. (Doc. 129, Ex. D).

[9] Plaintiff may not retain copies of documents designated "confidential" (with the exception of his own mental health records) before, during, or after the trial.  Counsel shall confer regarding the redaction of personally identifying information, such as social security numbers, phone numbers, and addresses.